UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

OLA M. BATTLE

                Plaintiff,
   v.                                                 **DECISION AND ORDER**
                                                           11-CV-624S

DAVID CARROLL and HART
HOTELS, INC.,

                Defendants.
_____

## I. INTRODUCTION

Ola Battle was a longtime employee of Hart Hotels, Inc. when she was released after a confrontation with her supervisor, David Carroll, in 2010. A black woman, Battle claims that race was a motivating factor in her discharge, and she therefore asserts that Hart Hotels, which operates the Holiday Inn where Battle worked as a housekeeper, is liable under Title VII of the 1964 Civil Rights Act. As relevant to this case, Title VII makes it unlawful for an employer to "discharge any individual . . . because of [her] race." See 42 U.S.C. § 2000e-2(a).

As a threshold matter, in addition to the claim above Battle also brings a Title VII retaliation claim and a state-law discrimination claim against Hart Hotels and Carroll. But Battle affirmatively chose not to defend those claims in response to Defendants' motion for summary judgment, (see Pl.'s Br. at 1), and the claims will therefore be dismissed. As a consequence, David Carroll must also be dismissed from the case because, though New York discrimination law provides for individual liability, Title VII does not. See Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010) (per curiam).

With those claims and Defendant Carroll dismissed, Hart Hotels – now the lone defendant – moves for summary judgment on Battle's lone remaining claim, arguing that Battle has produced insufficient evidence to support the contention that her release was motivated by her race. For the following reasons, that aspect of the motion is denied.

## II. BACKGROUND

**A.     Facts[1]**

Ola Battle began working at the downtown Buffalo Holiday Inn as a housekeeper in 1993. She was eventually promoted, and her responsibilities in 2010 included inspecting rooms and supervising other housekeepers. Still, Battle had at least two supervisors to whom she reported: Teresa Strickland, the executive manager of the housekeeping department, and David Carroll, who is white and was the Hotel's general manager.[2]

On May 18, 2010 Carroll wrote a long email to Strickland, expressing displeasure with the "entire [housekeeping] department." (See Carroll email, attached as Ex. P to Pl.'s Stmnt. of Facts; Docket No. 51-16.) His grievances were many, but, regarding Battle, he was "shocked at [her] response . . . regarding check[-]in/check[-]out times" and complained that, on that morning, she could not be found on the hotel grounds until 8:20 a.m. despite being "punched in at 7:00 [a.m.]."(Id.)"I'm telling you right now," he wrote to Strickland, "if someone punched her in at 7:00 we're going to have a problem." (Id.) Carroll completed the email by writing that he was "done with attitudes, the sense of entitlement, the sense

---

[1]This Court has accepted facts in each party's statement of undisputed facts to the extent that they have not been controverted by the opposing party. See Local Rule 56(a)(2) (statements not specifically controverted are deemed admitted).

[2]"Strickland" is Teresa's married name; she reverted to her maiden name – Rembert – in 2010.

of disrespect from your department." (Id.) "If things don't change, I will clean house and start from scratch," he concluded. (Id.)

Battle learned of the email, and, although she was not scheduled to work, she came to the hotel the next day and requested a meeting with Carroll to discuss it. The two eventually met in Carroll's office, where Battle confronted Carroll, disputing the accusations Carroll made in the email. Rosemary Mankowski, an executive assistant at Hart Hotels, overheard at least part of the exchange. She says that it became "heated," and while the parties generally agree on at least that much, they ultimately arrive at different versions of the exchange. Who said what? Who swore first? These issues remain in some doubt.

There is, however, no dispute that at one point, Carroll told Battle something to effect of "you people are never satisfied." (See Mankowski Dep., 30:13.) In her deposition, Battle is more specific, claiming that Carroll told her, "I'm fucking tired about [sic] you people. You [sic] always complaining about something, this or that and this or that." (Battle Dep., 77:1-3.) Battle contends that Carroll was referring to his recent decision to allow Battle's family to stay in the hotel without charge for 10 days. "Did I not fucking let you and your family stay here?" Carroll allegedly asked Battle. (Battle Dep., 76:23-24.) "You people," she therefore contends, meant black people. But Carroll and Hart Hotels dispute that characterization; they suggest that he was referring to the housekeeping department.

In any event, as a result of the meeting, Carroll fired Battle. Battle recalls the following exchange occurring just as she was about to leave Carroll's office that day:

> Carroll: "Ola."
> Battle: "What?"
> Carroll: "And you're fucking fired."
> Battle: "What?"
> Carroll: "And you're fucking fired. Get the fuck off my premises."

Battle: "Fuck you too."

(Battle Dep., 77:12–19.)

At one time Carroll contended that he fired Battle only after she told him to "fuck off." (See, e.g., 5/19/2010 Memo to Mark Franz; Docket No. 51-19.) But he now appears to maintain that it was the entire exchange that led to her discharge. For her part, Mankowski can remember only that "there were a few F bombs dropped" and that when Battle was leaving "she did say it again." (Mankowski Dep., 31:6–8.) She cannot remember "who started the language thing." (Id., 31:13–14.)

**B.    Procedural History**

Proceeding *pro se*, Battle filed a complaint and an application to proceed *in forma pauperis* on July 21, 2011. (Docket Nos. 1, 2.) On August 3, 2011, this Court granted her *in forma pauperis* application and, undertaking an initial review of the complaint as required by 28 U.S.C. § 1915(e)(2)(b), dismissed all Title VII claims against David Carroll. (Docket No. 4.) This Court eventually assigned Kevin P. Wicka to represent Battle, (Docket No. 31), and with counsel appointed, the parties were granted permission to reopen discovery. (Docket No. 34.) Renewed discovery soon closed and Defendants filed the current motion for summary judgment.

### III.  DISCUSSION

**A.    Defendants' Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby,

4

Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted). Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**B.    Battle's Title VII Claim**

Battle claims that Hart Hotels violated Title VII of the 1964 Civil Rights Act, which prohibits the "discharge any individual . . . because of [her] race." See 42 U.S.C. § 2000e-2(a); see also § 2000e-2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race . . . was a motivating factor for any employment practice, even though other factors also motivated the practice."). Battle argues, among other things, that Carroll's reference to "you people" raises a reasonable

inference that her discharge was tainted with unlawful discrimination – an inference, she argues, that Hart Hotels has not overcome.

Without direct evidence of discrimination, race-based discrimination claims are analyzed under the Supreme Court's familiar McDonnell Douglas burden-shifting framework. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); see also Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004). Under that framework, a plaintiff must first establish a *prima facie* case by adducing sufficient evidence to permit a rational trier of fact to find that she: is a member of a protected class; was qualified for her position; and was subject to an adverse employment action suffered under "circumstances giving rise to an inference of discrimination." Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003); Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

If the plaintiff succeeds in establishing his *prima facie* case, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for its challenged action. McDonnell Douglas, 411 U.S. at 802; Terry, 336 F.3d at 138. If the employer does so, the McDonnell Douglas presumptions disappear, and the plaintiff must then set forth sufficient evidence to support a reasonable inference that discrimination occurred. See James v. N.Y. Racing Ass'n., 233 F.3d 149, 156 (2d Cir. 2000).

Ultimately, to sustain her claim, Battle must show that race was a motivating factor in her discharge. 42 U.S.C. § 2000e–2(m).

****

Drawing all inferences in Battle's favor and viewing the evidence in a light most favorable to her, this Court finds that Battle has established a *prima facie* case and that,

specifically, the altercation leading to her discharge supports a reasonable inference that race was a motivating factor in her discharge.

Hart Hotels does not dispute that Carroll uttered some form of the phrase "you people are never satisfied" in the course of his exchange with Battle on May 18, 2010. It does, however, imply that the phrase was not a reference to black people, but instead a reference to the housekeeping staff. It further argues that even if the remark could be considered racial in nature, it was only a single, "stray" remark, and it alone is insufficient to support her claim.

As for Hart Hotels' first contention, this Court finds that the intended meaning of the phrase, which of course can suggest a degree of racial animosity, represents a genuine issue of material fact. The two sides present conflicting evidence tending to support their own interpretation. For her part, Battle reasonably posits that Carroll was referring to black people by noting that Carroll uttered this phrase soon after reminding Battle that he allowed her family to stay in the hotel free of charge.  A fact-finder could conclude, then, that Carroll was upset that Battle, a black woman, continued to raise complaints despite his generosity in allowing her family to stay in the hotel for free.

Hart Hotels' suggestion is also plausible; Carroll may have been innocuously referring to the performance of the housekeeping staff.  In fact, there can be no dispute that  phrase "you people" is ambiguous and not necessarily indicative of discrimination. See, e.g., Big Apple Tire, Inc. v. Telesector Resources Group, Inc., 476 F.Supp.2d 314, 327 (S.D.N.Y. 2007). Here, the meeting in which Carroll uttered the phrase was precipitated by his email, which called into question the competency of the staff, and there is no dispute that the exchange concerned work-related – not race-related – issues.

But in the end, it is the fact-finder's prerogative, after weighing all the evidence, to reach its own conclusion on Carroll's state of mind when he decided to release Battle. As one court, dealing with a similar issue, has correctly observed, "questions of state of mind are best left to a jury," and references connecting "you people" to an undesirable trait may be construed as a "reflection of discriminatory motivation directed toward the plaintiff." Winston v. Verizon Servs. Corp., 633 F. Supp. 2d 42, 53 (S.D.N.Y. 2009); see also Montana v. First Fed. Sav. & Loan Ass'n of Rochester, 869 F.2d 100, 103 (2d. Cir. 1989) ("[S]ummary judgment is ordinarily inappropriate where intent and state of mind are at issue."); Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir.1997) ("Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.").

As for Hart Hotel's latter contention – that the remark, even if racially motivated cannot demonstrate that her *discharge* was racially motivated – this Court cannot agree.

Hart Hotels maintains that the comment was "stray." And, indeed, the law is settled that isolated, stray comments cannot serve to defeat a motion for summary judgment. See, e.g., Danzer v. Norden Systems, Inc., 151 F.3d 50, 56 (2d Cir.1998). But this comment was neither stray nor isolated: it was uttered in the course of the very same conversation in which Battle was fired and by the very person who fired her. Courts have pointed to these factors in determining that a comment is not "stray." Wooten v. Reconstruction Home, Inc., 5:02-CV-01278(NPM), 2005 WL 1502149 (N.D.N.Y. June 24, 2005) (citing Sciola v. Quattro Piu, Inc., 361 F.Supp.2d 61, 68 (E.D.N.Y.2005) and Santos v. Costco Wholesale, Inc., 271 F.Supp.2d 565, 573 (S.D.N.Y.2003)) (considering the speaker, temporal proximity, whether the remark – "you people" – was discriminatory, and whether it was

related to the decision-making process). In fact, the Second Circuit has "clarified the approach district courts should take when considering whether isolated 'stray remarks' are probative of discriminatory intent," see Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149 (2d Cir. 2010), by noting that "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination," but "the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be." Tomassi v. Insignia Financial Group, Inc., 478 F.3d 111 (2d Cir. 2007)). Taking this guidance into account, it becomes clear that Carroll's remark is not stray but rather is "probative" of "a discriminatory state of mind." See id.[3]

Still, Hart Hotels offers non-discriminatory reasons for Carroll's decision to discharge Battle. Chief among them is what Hart Hotels calls " insubordination." It argues that Battle was fired because she "confronted and challenged Carroll about management decisions." (Def.'s Br. at 12.) Hart Hotels also notes that, even before the meeting, Carroll was displeased with the housekeeping department's performance, and specifically with Battle's conduct regarding the "check[-]in/check[-]out times," as well her purported absence from duty that morning. Hart Hotels also contends that Battle violated a number of its "standards of conduct." One of these standards prohibits employees from being on the property unless the employee is on duty or otherwise has authorization.

---

[3] Hart Hotels cites at least two cases for the proposition that the phrase "you people" "fall[s] far short of the 'steady barrage' of opprobrious racial comments necessary as a matter of law." (Def.'s Br. at 13; Docket No. 41-1) (quoting Big Apple Tire, Inc. v. Telesector Res. Grp., Inc., 476 F. Supp. 2d 314, 327 (S.D.N.Y. 2007) and citing Griffin v. Ambika Corp., 103 F. Supp. 2d 297, 314 (S.D.N.Y. 2000)). But Battle is not bringing, as the plaintiff in those cases did, a hostile work environment claim. She therefore does not need to show, as those plaintiffs did, that her workplace was permeated with "severe" or "pervasive" discriminatory conduct. See Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) (internal quotation marks omitted). Hart Hotels' reliance on those portions of those holdings is therefore markedly misplaced.

Hart Hotels therefore contends that it was these considerations – not race – that led Carroll to fire Battle.

But these proffered reasons are contradicted by Carroll himself, and they are thereby exposed as potentially post-hoc, litigation-crafted justifications. In an email written the day after the incident to Mark Franz, the vice-president of human resources at Hart Hotels, Carroll wrote that he fired Battle *only after* she told him to "fuck off." (See Franz email, attached as Pl.'s Ex. S.) In a separate memorandum he drafted shortly after the incident, Carroll wrote that it was "*never my intention during the entire conversation*" to terminate Battle. (See 6/28/10 memorandum, attached as Pl.'s Ex. U) (emphasis added). Then, however, Battle muttered "fuck off" or "fuck you." (Id.) Still, even at this point, Carroll was not prepared to release her. He wrote in the memorandum, "I gave her an opportunity to take it back or apologize." (Id.) But Battle allegedly declined that invitation, responding brashly, "You heard me, fuck off." (Id.) Only then, after being told to "fuck off" twice, did he tell Battle "she was fired and to get out of my hotel." (Id.) According to Carroll, then, it was clearly not her absence from work, her "challenging" his decisions, or, most improbably of all, her simple presence on Hotel property on a day off that led to her discharge – it was her repeated cursing at him.

These competing explanations – even though they are all non-discriminatory – weaken Hart Hotels' credibility and thus weaken its contention that race was not a motivating factor in her release. In other words, the shifting explanations suggest, to a level sufficient to raise a genuine issue of material fact, that they may be pre-textual. Indeed, the Second Circuit has found that shifting justifications may be a sufficient basis on which a fact-finder could conclude that the proffered non-discriminatory reasons were simply

pretext for discrimination. See E.E.O.C. v. Ethan Allen, Inc., 44 F.3d 116, 120 (2d Cir. 1994) (collecting cases). A finding of pretext, in turn, "permit[s] the ultimate inference of discrimination." See id.; Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147, 120 S. Ct. 2097, 2108-09, 147 L. Ed. 2d 105 (2000) ("[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision."). And, at this stage, Battle need not present additional evidence; she can "rely upon the same evidence that comprised her *prima facie* case, without more." Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 124 (2d Cir. 2004).

Further, this Court, on summary judgment, cannot simply credit Carroll's contemporaneous explanation that he fired Battle because she swore at him. Although that would be a perfectly legitimate reason to fire her, Battle disputes that account of the interaction, maintaining that she cursed only after Carroll fired her.

Finally, Hart Hotels places much emphasis on Battle's statement at her deposition that she "would probably would still have [her] job if [she] had not walked through that door" to Carroll's office. (Battle Dep. Tr., 75:7–8.) This, Hart Hotels argues, proves that Battle knew it was her insubordination, and not her race, that led to her termination. But that interpretation assumes too much. It is at least equally possible that this statement reflects a recognition that Carroll would not have had occasion to express and act on any racially-motivated animus had she not confronted him about the email. Walking through Carroll's door is simply a distal – not a proximal – cause of her discharge. She also might not have lost her job if Carroll did not send the email the previous day, or if Battle had not seen it. But none of that necessarily means that race could not have played any meaningful role

in her termination. Like a car-accident victim wistfully thinking "if only I took the train," this statement proves little, if anything, about fault.

And, what is more, the remainder of Battle's testimony on this score does not support the meaning that Hart Hotels seeks to attribute to it. According to Battle, she did not became upset or confrontational until Carroll fired her. It could not be, then, that Battle has somehow recognized her own fault – her own "insubordination" – when she goes on to describe a scene where she is entirely innocent.

In the end, Carroll's direction of a potentially racially derogatory remark toward Battle in the same conversation in which he ultimately fired her, coupled with the vacillating explanations for her discharge (with a genuine dispute surrounding Carroll's contemporaneous explanation), together raise a permissible and reasonable inference that Carroll's decision to fire her may have been motivated – at least in part – by race. See Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2523, 186 L. Ed. 2d 503 (2013) ("It suffices [] to show [in a status-based discrimination suit] that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision."). Accordingly, Hart Hotel's motion for summary judgment is denied.

## IV. CONCLUSION

Before she was fired Ola Battle had been a 17-year employee of Hart Hotels, and, despite recent concerns about her performance on the job, her manager, David Carroll, admitted that he had no intention of firing her before she twice swore at him at a meeting. But Battle disputes Carroll's account of the meeting, claiming she didn't swear until after she was fired. And there is no dispute that Carroll uttered a potentially racially derogative

phrase in the course of the conversation that led to her discharge. What is more, the other non-discriminatory reasons provided by Hart Hotels for her termination are inconsistent and sometimes implausible. The ultimate question presented by this case – whether race played a motivating factor in Battle's discharge – is therefore best left to a fact-finder, not a court hearing a summary judgment motion. Indeed, the function of the court in this situation is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Undertaking that function, this Court finds that genuine issues exist. For those reasons, the contested portions of Defendants' motion for summary judgment are denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 41) is GRANTED in part and DENIED in part.

FURTHER, Defendant David Carroll is DISMISSED as a defendant.


Dated:     April 26, 2014
           Buffalo, New York

                                              /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                                  Chief Judge
                                            United States District Court